UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

In re:                                                            Chapter 11

ST. MARK'S PROPERTY ACQUISTION LLC,                               Case No. 25-12862 (DSJ)

                            Debtor.

-----------------------------------------------------------------x

### DECISION AND ORDER RESOLVING THE MOTION TO DISMISS OR CONVERT DEBTOR'S CHAPTER 11 CASE OR, IN THE ALTERNATIVE, TO LIFT THE AUTOMATIC STAY

**APPEARANCES:**

**McCAFFREY & ASSOCIATES, P.C.**

Counsel to the Debtor

88-18 Sutphin Blvd

Suite 1

Jamaica, NY 11435

By: Brian McCaffrey, Esq.


**McANDREW VUOTTO, LLC**

Counsel to First Commerce, LLC

1 Blue Hill Plaza, Suite 1509

Pearl River, New York 10965

By: Jonathan P. Vuotto, Esq.


**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**


Before the Court is the motion (the "**Motion**") of First Commerce LLC ("**Movant**" or

"**Secured Creditor**") to dismiss (or convert to Chapter 7) the bankruptcy case of St. Mark's

Property Acquisition LLC ("**Debtor**") pursuant to § 1112(b) of the Bankruptcy Code or, in the

alternative, to lift the automatic stay so as to permit the Secured Creditor to pursue state-court

relief relating to Debtor's ongoing failure to make required payments associated with its commercial condominium unit. Movant argues that the Debtor's bankruptcy case was filed in bad faith with the sole purpose of thwarting its foreclosure efforts. Debtor filed an objection (the "**Objection**"), arguing that the motion should be denied because Debtor filed a plan of reorganization early in the case and there is a sizeable equity cushion in Debtor's property.

The Court held a hearing on the motion on February 26, 2026. For reasons stated on the record on February 26 and explained below, the Court made a partial ruling on the motion by holding that cause existed to either dismiss or convert the case under Bankruptcy Code Section 1112(b). In large part because the Movant was unsure which of those two statutory alternatives it preferred, the Court continued the hearing to March 19, 2026, so that the parties could further address what consequence should follow from the Court's holding that cause to dismiss or convert exists. Following the February 26 hearing, Debtor filed a *Post-Hearing Brief* [Dk. No. 25], Movant filed a *Response to Debtor's Supplemental Opposition* [Dk. No. 29], and Debtor filed a *Reply* [Dk. No. 30].

For the reasons stated below, and having considered the record, the parties' submissions, and arguments presented at the February and March hearings, the Court adheres to its prior oral ruling that cause exists to either dismiss or convert the case, and concludes that, in the circumstances and for reasons explained below, conversion rather than dismissal is appropriate. The Court therefore GRANTS the motion to convert this case.

## BACKGROUND

Debtor is a limited liability company that owns commercial real estate property located at 800 Second Avenue, Unit 802, New York, NY 10017 (the "**Property**") alleged to be worth $1.4

2

million. Debtor has one tenant, its own insider consulting subsidiary or related company, St. Mark's Consulting LLC ("**Consulting**"). Debtor ostensibly leases the space to Consulting for $20,000 per month. Debtor reportedly made $192,000 in rental income in 2024 and 2025 and $75,000 in 2023. *See Chapter 11 Voluntary Petition* ("**Petition**") [Dk. No. 1].

First Commerce LLC holds a first mortgage on the property in the amount of appropriately $652,410.44. *Id.* That mortgage matured on January 12, 2022, and remains unpaid more than four years later. *See* Motion at 7. Debtor's amended schedules list a second mortgage by the U.S Small Business Administration ("**SBA**") for an initial amount of $434,000. *See Amended Schedule D* [Dk. No. 22]. Debtor identified one unsecured claim in the amount of $14,697.35 owed to Wells Fargo. *See Amended Petition* [Dk. No. 8].

Before Debtor filed its bankruptcy petition, First Commerce filed a foreclosure action in light of Debtor's failure to make full payments on the Mortgage since March 2020, although Debtor made a few payments in 2021. *See* Motion at 7. An arbitrator "declared to be due in the aggregate amount of $603,410.44, as of November 15, 2024, consisting of $492,116.82 in principal loan indebtedness and accrued interest of $111,293.62." *Id.* at 9. In October 2025, the state court entered a judgment of foreclosure and subsequently scheduled the sale of the property for January 14, 2026. *Id.* at 9.

On December 22, 2025, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

## JURISDICTION

This Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. §§ 157(b), 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012

(Preska,C.J.). This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2) because it concerns a motion to dismiss the debtor's bankruptcy petition. This Court possesses the authority to enter a final judgment in a core proceeding "arising under title 11" consistent with Article III of the United States Constitution. *See Stern v. Marshall,* 564 U.S. 462, 474–75 (2011); *see also In re Fairfield Sentry Ltd. Litig.,* 458 B.R. 665, 674 (S.D.N.Y. 2011) (proceedings arise under title 11 "when the cause of action or substantive right claimed is created by the Bankruptcy Code"). Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## LEGAL STANDARD

Section 1112(b)(1) of the Bankruptcy Code provides that a case may be dismissed "for cause." Section 1112(b)(4) enumerates scenarios in which a court can determine that "cause" exists, but the list is illustrative, not exhaustive. *See In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1311 (2d Cir. 1997). A finding that a bankruptcy case was filed in bad faith can constitute "cause" for dismissal under § 1112(b). *In re AAGS Holdings LLC*, 608 B.R. 373, 382 (Bankr. S.D.N.Y. 2019); *see also In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d Cir. 1999) (collecting cases); *C-TC,* 113 F.3d at 1310.

"A petition is filed in bad faith 'if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings.'" *AAGS Holdings LLC*, 608 B.R. at 382–83 (quoting *Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 227 (2d Cir.1991)). "The standard in this Circuit is that a bankruptcy petition will be dismissed if both objective futility of the reorganization process and subjective bad faith in filing the petition are found." *In re Kingston Square Assocs.,* 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997).

4

Courts in the Second Circuit commonly examine the following factors that are viewed as indicative of a bad faith filing:

(1) the debtor has only one asset;

(2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;

(3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;

(4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;

(5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;

(6) the debtor has little or no cash flow;

(7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and

(8) the debtor has no employees.

*C–TC,* 113 F.3d at 1311 (quoting *Pleasant Pointe Apartments, Ltd. v. Kentucky Hous. Corp.,* 139 B.R. 828, 832 (W.D. Ky. 1992)).

Courts are not to apply these factors mechanically but rather are to consider all the facts and circumstances of the case, and no one factor is determinative. *Id.* at 383 (citations omitted). Typically, Courts will conclude that a debtor filed its chapter 11 petition in good faith when the debtor was experiencing a difficult financial situation and needed to (and was genuinely attempting to) reorganize, but courts will conclude that a debtor filed its petition in bad faith when the debtor had no reason to reorganize or rehabilitate and the petition was filed "merely [to] attempt to avoid litigating issues in state court." *Fraternal Composite Servs., Inc. v. Karczewski*, 315 B.R. 253, 257 (N.D.N.Y. 2004).

## DISCUSSION

### A. Whether Cause Exists

5

As noted, at the February 26 hearing, the Court orally ruled that cause exists to dismiss or convert this case under section 1112(b)(4). For the reasons stated on the record and explained below, the Court finds that a substantial majority of the *C-TC* factors are present and support the finding of bad faith, which constitutes "cause" for dismissal or conversion. The *C-TC* factors apply as follows:

Factor 1 – the debtor has only one asset – is satisfied here. The debtor's only asset is the real property located at 800 Second Avenue, Unit 802, New York, New York 10017.

Factor 2 – the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors – is satisfied here. Debtor's two secured creditors are owed a total of $859,235.77; meanwhile debtor has only one unsecured claim in the amount of $14,697.35, which Debtor owes to Wells Fargo.

Factor 3 – the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt – is satisfied here. Debtor's sole asset is the subject of a foreclosure judgment. In October 2022, First Commerce commenced a foreclosure action following Debtor's failure to make full mortgage payments since March 2020. Three years later, First Commerce obtained a judgment of foreclosure, and a sale was scheduled for January 14, 2026. Avoiding that foreclosure sale was the obvious precipitating reason for Debtor's filing. It is unclear whether the bankruptcy serves any other purpose.

Factor 4 – the debtor's financial condition is, in essence, a two-party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action – is largely satisfied. Debtor emphasizes its asserted history of timely payment and "current" status on its SBA loan, and argues this shows that First Commerce is unreasonable and that Debtor is

attempting to proceed in good faith with its secured creditors. This observation does nothing to alter the essentially two-party nature of Debtor's dispute with First Commerce as there are no material disputes with or obligations to other creditors to be resolved through the bankruptcy case.

Factor 5 – the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights – is satisfied. Having spent years litigating in state court, Debtor filed this case on the eve of a foreclosure sale, thus indicating an intent to further frustrate First Commerce's efforts to enforce its rights on a loan that matured in 2022. If Debtor were interested in a timely and fair resolution with its lender, it could have pursued it long before its eve-of-foreclosure sale bankruptcy filing.

Factor 6 – the debtor has little or no cash flow – is disputed and cannot be determined on the current record. Debtor's monthly operating reports state that Debtor had a gross income of $15,000 in December 2025 and $20,000 in January, February and March 2026, all supposedly from rent payments by an insider tenant – St. Mark's Consulting LLC. First Commerce challenges the validity of the lease between Debtor and St. Mark's Consulting LLC, an entity that appears to be solely owned by Debtor's principal. Debtor has not provided any evidence showing that the lease is in fact an arm's-length agreement. Furthermore, wherever this self-reported revenue went, it did not go to First Commerce and it seems either to have gone somewhere or never to have existed. Debtor's failure to explain the dissipation of purported rental income does nothing to bolster the Court's confidence in Debtor's characterization of the rental income from St. Mark Consulting as a legitimate steady source of cash flow. The Court has not conducted a full evidentiary hearing on whether Debtor actually receives the cash flow it asserts from its insider tenant, so the Court cannot conclude that factor six is satisfied here.

7

Factor 7 – the debtor can't meet current expenses including the payment of personal property and real estate taxes. The motion raised concerns about Debtor's unpaid condominium charges and taxes. At the February 26 hearing, Debtor explained that the payments of the condominium charges and taxes were delayed due to a freeze placed on Debtor's account and that those payments have been made. This factor weighs at least partly in favor of the Debtor, although Debtor's failure to pay anything to its secured lender is concerning.

Factor 8 – the debtor has no employees – is satisfied here.

A review of these factors and the totality of the circumstances of this case demonstrates that almost all of the *C-TC* factors are present here. The Court is particularly troubled and concludes bad faith is present because, if one credits Debtor's report that it has been receiving high rental income from its asserted related tenant entity (as Debtor now asserts in an attempt to disprove at least one *C-TC* factor), its failure to pay its mortgage for years and its commencing of this case only on the eve of a long-pursued foreclosure sale reflect a bad-faith effort to continue to evade meeting its obligations, or an attempt to coerce its longstanding secured lender to finance Debtor against the lender's wishes for a substantial additional period even though the original loan matured (but went unpaid) in January 2022. Therefore, cause for dismissal or conversion under Section 1112(b)(1) exists.

### B.  Motion to Reconsider Court's Cause Finding

After concluding its February 26 ruling that cause exists under Section 1112(b)(1) of the Bankruptcy Code, the Court continued the hearing to March 19, 2026, to permit First Commerce to state and explain a firmer position on what the appropriate remedy is – dismissal or

8

conversion. In the intervening time, Debtor filed a post-hearing brief essentially arguing for a reconsideration of the Court's holding that cause for dismissal or conversion exists.

Rule 59(e) of the Federal Rules of Civil Procedure, made applicable here by Rule 9023 of the Federal Rules of Bankruptcy Procedure, authorizes the filing of a "motion to alter or amend a judgment" Fed. R. Civ. P. 59(e); Fed. R. Bankr. P. 9023. A motion to alter or amend a judgment is subject to a "strict" standard and "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Survs., Inc. v. Tonga Partners, L.P.,* 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (quoting *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995))."The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.,* 956 F.2d 1245, 1255 (2d Cir. 1992) (citations omitted). A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Analytical Survs., Inc.,* 684 F.3d at 52 (quoting *Sequa Corp. v. GBJ Corp.,* 156 F.3d 136, 144 (2d Cir. 1998)). It is also not "an opportunity for a party to 'plug[ ] the gaps of a lost motion with additional matters.'" *Cruz v. Barnhart*, 2006 WL 547681, at *1 (S.D.N.Y. Mar. 7, 2006) (quoting *Carolco Pictures Inc. v. Sirota,* 700 F. Supp. 169, 170 (S.D.N.Y. 1988)). "Arguments raised for the first time on a motion for reconsideration are therefore untimely." *Cruz,* 2006 WL 547681, at *1 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Stroh Cos., Inc.,* 265 F.3d 97, 115–16 (2d Cir. 2001)). Furthermore, "[a] party cannot use a Rule 59(e) motion to cure its own procedural failures or to introduce new evidence or advance arguments that could and should have been presented originally to the court." *In re CPJFK, LLC,* 496 B.R. 65, 67 (Bankr.

9

E.D.N.Y. 2011) (quoting *Scheidelman v. Henderson (In re Henderson)*, 2010 WL 4366021, at \*5 (Bankr. N.D.N.Y. Oct. 28, 2010)). Reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys. Inc. Sec. Litig.,* 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations omitted).

Rule 60(b) of the Federal Rules of Civil Procedure, made applicable here by Rule 9024 of the Federal Rules of Bankruptcy Procedure, provides that "the court may relieve a party … from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or  (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b); Fed. R. Bankr. P. 9024.

In the Second Circuit, Rule 60(b) motions are generally disfavored and are "properly invoked only when 'extraordinary circumstances' justify relief or 'when the judgment may work an extreme and undue hardship.'" *Empresa Cubana Del Tabaco v. Gen. Cigar Co. Inc.,* 385 F. App'x. 29, 31 (2d Cir. 2010) (citing *Marrero Pichardo v. Ashcroft,* 374 F.3d 46, 55 (2d Cir. 2004) and quoting *Nemaizer v. Baker,* 793 F.2d 58, 63 (2d Cir. 1986)); *see also Tapper v. Hearn,* 833 F.3d 166, 172 (2d Cir. 2016) (quoting *Nemaizer*, 793 F.2d at 63 (2d Cir. 1986)) (Rule 60(b)(6) "applies only 'when the asserted grounds for relief are not recognized in clauses (1)-(5) of the Rule' and 'there are extraordinary circumstances justifying relief.'"); *Devon Mobile Commc'ns Liquidating Tr. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.),* 324

10

B.R. 492, 494 (Bankr. S.D.N.Y. 2005) ("Motions for reconsideration are disfavored, because [c]omplete disposition of discrete issues and claims is often essential to effective case management. If a court is forced to revisit earlier interlocutory rulings, much of the advantage in making the early rulings would be lost.") (citations and quotations omitted); *United Airlines, Inc. v. Brien,* 588 F.3d 158, 176 (2d Cir. 2009)); *U.S. v. Int'l Bhd. of Teamsters,* 247 F.3d 370, 391 (2d Cir. 2001) ("A motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances."). "As [Rule 60](b)(6) applies only when no other subsection is available, grounds for relief may not be mistake, inadvertence, surprise or excusable neglect." *Nemaizer,* 793 F.2d at 63. "Rule 60(b) may not be used to 'relitigate matters settled by the original judgment.'" *Frankel v. ICD Holdings S.A.,* 939 F. Supp. 1124, 1127 (S.D.N.Y. 1996) (quoting *Donovan v. Sovereign Sec., Ltd.,* 726 F.2d 55, 60 (2d Cir. 1984)). "The burden of proof is on the party seeking relief from judgment." *Int'l Bhd. of Teamsters,* 247 F.3d at 391. "Properly applied[,] Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *In re Enron Corp.,* No. 01-16034 (AJG), 2003 WL 1562202, at *12 (Bankr. S.D.N.Y. Mar. 21, 2003) (quoting *Nemaizer,* 793 F.2d at 61). Whether to grant a motion for relief under Rule 60(b) is within the discretion of the court. *Stevens v. Miller,* 676 F.3d 62, 67 (2d Cir. 2012) (citing *Montco, Inc. v. Barr (In re Emergency Beacon Corp.),* 666 F.2d 754, 760 (2d Cir. 1981)). Rule 60(b) "is not 'a substitute for a timely appeal . . . .'" *Frankel*, 939 F. Supp. at 1127 (quoting *Nemaizer*, 793 F.2d at 61).

Here, Debtor has failed to satisfy the standard for reconsideration. Debtor's contentions in the post-brief filings are mainly: 1) there is a current second mortgage held by SBA pursuant to a separate loan – a factual contention which Debtor curiously insists should have been raised by First Commerce, but which Debtor also did not raise earlier; 2) St. Mark's Consulting LLC,

Debtor's insider tenant, is not a new entity as there is a prior lease dating back to 2012; 3) Debtor was current on property taxes and common charges as of the time of the February 26 hearing; 4) "[C]ontrolling and persuasive authority within this Circuit holds that 'Bad Faith' dismissal is inappropriate where, as here, the Debtor is solvent, has equity, and proposes a 100% payout." *Post-Hearing Br.* at 5.

This decision addresses each of these contentions in turn.

First, the existence of a second mortgage based on the SBA loan does not change the fact that Debtor has few unsecured creditors with claims that are small in relation to those of the secured creditors (*C-TC* factor 2). Furthermore, Debtor's assertion that it has a "long history of payments" and has paid down the SBA loan from $434,000 to $205,634, *see Post-Hearing Br. at 2,* does not change the reality that this case is almost purely a continuation in a new forum of Debtor's long-running dispute with its lead secured creditor, First Commerce (*C-TC* factor 4).

Second, evidence of an asserted prior lease with St. Mark's Consulting LLC does not overcome First Commerce's undisputed showing that it has not been paid on its loan for years. First Commerce challenges the validity of the current lease and has provided a listing advertising the space supposedly leased by St. Mark's Consulting LLC as available. The Debtor insists that listing is outdated and that it is not seeking a new tenant for the unit. The Court has not conducted an evidentiary proceeding that would enable it to make findings as to whether the asserted lease is genuine or whether the lease was adhered to according to its terms. But regardless, Debtor's unquestioned failure to repay its lender and its effort to derail a court-ordered foreclosure sale with a last-minute bankruptcy filing is evidence of Debtor's bad faith.

This conclusion is not overcome by Debtor's belated inclusion of February 13 and 14, 2026 email confirmations of payments of the HOA and UST quarterly fees, attached to Debtor's post-

12

hearing briefing. *Post-Hearing Br. at Ex. I*. First, this information is not appropriately raised for the first time on rehearing because Debtor could have made this evidence available either in its initial opposition to the Motion or at the February 26 hearing. Moreover, as the Court noted during the February hearing, even assuming Debtor is current on all expenses, the majority of the *C-TC* factors are present and the facts and circumstances overall indicate Debtor's bad-faith filing.

Also unpersuasive is Debtor's argument "that a solvent debtor with substantial equity and a feasible plan to pay all creditors in full does not file in bad faith." *Post-Hearing Br. at 9* (citing *In re 68 West 127 St., LLC,* 285 B.R. 838 (Bankr. S.D.N.Y. 2002) (applying the *C-TC* factors in the context of a motion for relief from the automatic stay on bad faith grounds, and stating that "[t]he critical test of a debtor's bad faith remains whether on the filing date there was no reasonable likelihood that the debtor intended to reorganize and whether there is no reasonable possibility that the debtor will emerge from bankruptcy"); *In re Sletteland,* 260 B.R. 657, 663 (Bankr. S.D.N.Y. 2001) (applying the *C-TC* factors and other bad faith factors relevant to the context of a bankruptcy filing by a debtor seeking an appeal of a judgment, and ultimately denying dismissal on bad faith grounds where movant failed to show that Debtor lacked a good faith intent to reorganize). Despite its professions to the contrary, Debtor has not convincingly shown that there is a viable path to confirmation. Debtor's amended plan proposes paying a lump sum of $150,000 and amortizing the remaining owing amount owed to First Commerce over a 10-year period with an unspecified balloon amount to be paid seven years after the Effective Date. *See Amended Chapter 11 Plan; Dk. No. 23.* This is in the face of the expiration (in 2022) of the maturity date of the original mortgage and Debtor's established track record of non-payment. There is, at the very least, serious question whether Debtor would be ready, willing, and able to

carry out its newly proposed payment schedule if the Court saddles First Commerce with many years more of being obliged to wait and hope that Debtor will pay them. And even if the Court were persuaded Debtor could and intends to make the payments called for by its plan, there is serious question whether the Court could or would approve, over objection, Debtor's effort to utilize the bankruptcy process to force its unwilling secured creditor to refinance (or really finance, since the original loan expired in 2022) a matured loan under favorable terms to the Debtor.

For these reasons, Debtor's post-hearing arguments both fall short of the reconsideration standard by improperly attempting to "take a second bite at the apple," and fail on their own terms. The Court therefore declines to change its conclusion that First Commerce has shown "cause" for dismissal or conversion.

### C. Conversion Versus Dismissal

The Court now turns to the question of conversion versus dismissal. Section 1112(b)(1) authorizes a court to dismiss or convert, "whichever is in the best interests of creditors and the estate…" § 1112(b)(1). Courts in this circuit consider the following factors when determining whether to convert or dismiss:

1. Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal;
2. Whether there would be a loss of rights granted in the case if it were dismissed rather than converted;
3. Whether the debtor would simply file a further case upon dismissal;
4. The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors;
5. Whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise;
6. Whether any remaining issues would be better resolved outside the bankruptcy forum;
7. Whether the estate consists of a "single asset";
8. Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;

14

9. Whether a plan has been confirmed and whether any property remains in the estate to be administered; and

10. Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

*In re Westhampton Coachworks, Ltd.,* No. 09-73008-AST, 2010 WL 5348422, at *6 (Bankr. E.D.N.Y. Dec. 21, 2010) (citations omitted); *see also In re BH S & B Holdings, LLC,* 439 B.R. 342, 346–47 (Bankr. S.D.N.Y. 2010).

At the March 19 hearing, First Commerce stated a preference for conversion rather than dismissal, and the Court is satisfied that a number of the factors identified in *Westhampton Coachworks* weigh in favor of conversion.

First, given the murkiness of Debtor's financial history and dealings and its own explanation that its central transactions were with affiliated non-debtor entities, while Debtor has not paid its mortgage lender for years, there is a substantial possibility of preferential or avoidable transfers that a Chapter 7 trustee would be well positioned to pursue. The first, fourth, and fifth *Westhampton Coachworks* factors thus are satisfied.

Second, dismissal will be prejudicial to First Commerce's rights. First Commerce reasonably fears that, upon the resumption of state-court proceedings and without this Court's supervision, there is a substantial possibility that Debtor will find ways to further delay or frustrate First Commerce's efforts to move forward with foreclosure, including by possibly having a purportedly related entity with a purported possessory interest file a new bankruptcy case to stay any foreclosure process if and when a foreclosure sale became imminent. Debtor's history of nonpayment further suggests that First Commerce will struggle to be compensated if it loses the structure and regularity that bankruptcy proceedings offer. Thus, factors two and three weigh in favor of conversion.

Third, a Chapter 7 Trustee will be able to oversee an orderly sale of the property and investigate the disbursement of proceeds and any rental income for the benefit of creditors; there are no remaining issues to be resolved outside the bankruptcy forum; and this case involves a single asset estate. For these additional reasons coupled with those discussed above, factors four, six, and seven all weigh in favor of conversion.

The Court recognizes that conversion will result in additional administrative costs to the estate, but the case presents the possibility of added recoveries by an appointed fiduciary trustee, and the parties have not argued that the Debtor is administratively insolvent or at risk of it. The appointment of a trustee accordingly will not unduly burden the interests of creditors or the estate. *See In re Babayoff,* 445 B.R. 64, 82 (Bankr. E.D.N.Y. 2011) ("The possible benefits of conversion must be weighed against the incremental costs to the estate. Where a trustee would impose an unaffordable burden, dismissal may well be in the estate's best interests... But where there is a prospect of the recovery of assets, conversion may be in the best interests of the estate and the creditors despite these costs") (citation omitted). Furthermore, "a trustee's ability to examine the estate as an independent fiduciary and administer it in an orderly fashion protects creditors, just as the benefits of bankruptcy protection benefitted the debtor.... Viewed another way, if [t]he creditors ... are better served by the centralized collection and disbursement provided by the bankruptcy process, then conversion, rather than dismissal, is in the best interests of creditors and serves as the preferred remedy." *In re Babayoff,* 445 B.R. 64 at 82 (citations omitted). For these reasons, the Court finds that conversion is the appropriate remedy.

## CONCLUSION

For the reasons stated above, the motion to convert Debtor's bankruptcy case is GRANTED. In light of this outcome, the Court need not and does not decide the Movant's alternate

16

request for relief from the automatic stay. Movant shall submit an appropriate proposed order effectuating this ruling and providing for necessary implementation steps such as the appointment of a Chapter 7 trustee. The time to appeal shall run from the entry of that order.

IT IS SO ORDERED.

Dated: New York, New York
        May 6, 2026

_s/ David S. Jones_
HONORABLE DAVID S. JONES
UNITED STATES BANKRUPTCY JUDGE